IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

DAY DREAMS RESOURCES, LLC
and JERRY P. OGDEN                                        PLAINTIFFS

VS.                          CIVIL ACTION NO: 5:15-cv-37(DCB)(MTP)

CHARLES D. HUTCHISON                                      DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the plaintiffs' (Day Dreams
Resources, LLC, and Jerry P. Ogden) Motion to Dismiss Defendant's
(Charles D. Hutchison) Counterclaim **(docket entry 22)**; on the
plaintiffs' Motion for Partial Summary Judgment **(docket entry 26)**;
on the defendant's Motion for Leave to Amend Answer **(docket entry
32)**; and on the defendant's Motion for Leave to file a Sur-Reply to
the plaintiffs' reply brief in support of their motion for partial
summary judgment **(docket entry 41)**.  Having carefully considered
the motions and responses, the arguments of counsel and the
applicable law, and being fully advised in the premises, the Court
finds as follows:

The plaintiffs' Complaint makes the following allegations:
plaintiff Jerry P. Ogden ("Ogden") is the sole member and manager
of Plaintiff Day Dreams Resources, LLC ("Day Dreams").  Day Dreams
entered into an oral contract with Defendant Charles D. Hutchison
("Hutchison") to acquire interests in the Tuscaloosa Marine Shale,
which covers parts of southern Louisiana and southwestern
Mississippi, on Hutchison's behalf.  On Hutchison's instructions,
"Day Dreams and Ogden, or their agent," were to obtain commitments

for lease agreements with the owners of the mineral rights in the land, contingent on receiving clear title. Compl. ¶ 8(c). Day Dreams contracted with Lone Wolf Properties, LLC ("Lone Wolf") to act as its "acquisition agent in providing lease acquisition and other landman services." Compl. ¶ 9. "Hutchison agreed to reimburse Day Dreams for expenditures made for his benefit during the course of acquiring the leases." Compl. ¶ 8(h). Hutchison also agreed to pay Ogden a finder's fee based on the net mineral acreage acquired. "Day Dreams and/or Lone Wolf acquired for Hutchison's benefit twenty-one (21) oil, gas and mineral leases consisting of 3,517.455 net mineral acres" from July 2013 to July 2014. Compl. ¶11. Between July and September 2014, Day Dreams identified nineteen more mineral tracts with potential for acquisition for the benefit of Hutchison. In the last week of October 2014, Hutchison instructed Day Dreams, through Ogden, to stop leasing additional acreage. By this time, Day Dreams and/or Lone Wolf had already "leased or committed to lease" ten of those nineteen tracts. Compl. ¶ 13. Day Dreams alleges that Hutchison has refused to pay for these leases, thus requiring Day Dreams and/or Lone Wolf "to fund the lease acquisitions in order to avoid defaulting." Compl. ¶ 15.

Hutchison filed a Motion to Dismiss the plaintiffs' Complaint on May 28, 2015. The motion was denied on July 22, 2015. On August 5, 2015, Hutchison filed his Original Answer and Counterclaims. The plaintiffs moved to dismiss the counterclaims on August 26, 2015, and filed a motion for partial summary judgment

on September 9, 2015.  Magistrate Judge Parker entered a Case
Management Order on September 16, 2015, which set deadlines for,
inter alia, motions for amended pleadings (October 16, 2015) and
discovery (April 15, 2016).  Hutchison filed his motion to amend
his Answer on September 24, 2015.  He also filed his response to
the plaintiffs' motion to dismiss counterclaims on September 25,
2015, and his response to the plaintiffs' motion for partial
summary judgment on September 28, 2015.  The plaintiffs filed their
reply memorandum in support of their motion for partial summary
judgment on October 8, 2015, and their response to the defendant's
motion to amend answer on October 12, 2015.  Hutchison filed his
reply memorandum in support of his motion to amend answer on
October 19, 2015.  On October 22, 2015, the plaintiffs filed a
motion to file a sur-reply to Hutchison's reply memorandum, and the
plaintiffs attached a copy of their proposed sur-reply to the
motion.

  Hutchison's Motion for Leave to Amend Answer was filed well
before the case management deadline for amendments of pleadings;
however, it was filed more than 21 days after the Original Answer
was filed.  Therefore, the defendant may amend his Answer "only
with the opposing party's written consent[1] or the court's leave."
Fed.R.Civ.P. 15(a)(1)(B) & 15(a)(2).  "The court should freely give
leave when justice so requires."  Fed.R.Civ.P. 15(a)(2).

  The Fifth Circuit has devised a four-part test for deciding

---

  [1] The plaintiffs do not consent to the proposed Amended
Answer.

whether leave to amend should be allowed: the court must consider (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.   <u>S & W Enter., LLC v. Southtrust Bank of Alabama</u>, 315 F.3d 533, 536 (5th Cir. 2003).

In his motion for leave to amend, Hutchison states that in his original Answer he mistakenly admitted the allegations in paragraphs 12 and 13 of the plaintiffs' Complaint.  He also states that he informed plaintiffs' counsel of the mistake "within one or two days of discovering it."  (Docket entry 32, p. 1).

Paragraph 12 of the Complaint alleges:

> Between July and September, 2014, Day Dreams notified Hutchison that it had identified nineteen (19) additional mineral tracts in the TMS that were available for leasing.  Consistent with the terms of the oral contract, Hutchison instructed Day Dreams to attempt to acquire leases on fifteen (15) of these mineral interests on his behalf at lease prices agreed to by Hutchison, contingent upon good and marketable title.  Accordingly, Day Dreams and Lone Wolf, as brokers and agents for Hutchison, contacted the owners of the available mineral interests to finalize lease terms. By the last week of October, 2014, Day Dreams and/or its agent, Lone Wolf, for Hutchison's benefit, had entered into and/or obtained lease commitments for ten (10) of these mineral tracts contingent only on good and marketable title.  Of the remaining five (5) tracts requested by Hutchison, by that time three (3) of the mineral owners had not leased or committed to lease, and two (2) of the mineral owners granted options to lease but not lease commitments.

Complaint, ¶ 12.

Regarding paragraph 12, defendant states in his motion to amend that he "cannot admit all the allegations of paragraph 12

because (1) he lacks knowledge about whether Day Dreams and Lone Wolf contacted the owners of available mineral interests to finalize lease terms; and (2) he lacks knowledge about whether, by the last week of October 2014, Day Dreams or Lone Wolf entered into or obtained lease commitments for certain mineral tracts." Further, he avers that he is "trying to find out what discussions Day Dreams or Lone Wolf had with mineral owners ... when, if ever, Day Dreams or Lone Wolf entered into 'lease commitments' for certain tracts ... [and] what the 'lease commitments' were." (Docket entry 32, p. 3).

> Paragraph 13 of the Complaint alleges:
>
> In the last week of October, 2014, Ogden spoke with Hutchison regarding payment for the ten mineral leases that Hutchison had instructed Day Dreams to acquire and which had been committed to date. During those conversations, Hutchison instructed Ogden to "stop leasing." As instructed, Ogden, Day Dreams and Lone Wolf ceased their efforts to locate available TMS mineral interests, and ceased their efforts to acquire leases with the five (5) mineral owners who had not yet entered into leases or lease commitments for Hutchison's benefit. However, by this time, on Hutchison's instructions, Day Dreams and/or Lone Wolf had leased or committed to lease, for Hutchison's benefit, ten (10) of the mineral tracts totaling 462.99 net mineral acres.

Complaint, ¶ 13.

As for paragraph 13, defendant states in his motion to amend that he cannot admit all the allegations in paragraph 13 because he "does not recall speaking with Ogden the last week of October 2014." He does recall telling Ogden to stop leasing, and believes that their conversation happened no later than the last week of

October, and perhaps weeks earlier than that.  (Docket entry 32, p. 3).

In support of his position that his admissions in the Original Answer were a mistake, Hutchison states that in February of 2015, months before filing his Answer, he told Ogden that he (Hutchison) was not responsible for any of the leases at issue because the leases were closed on after Hutchison told Ogden to stop.  Also, a footnote in Hutchison's Answer states that "Hutchison maintains that he told Ogden to stop leasing before the last week in October."  Thus, Hutchison maintains, both of these positions are inconsistent with admitting paragraphs 12 and 13 of the plaintiffs' Complaint.

Hutchison also admitted the allegations in paragraphs 17 and 27 of plaintiffs' Complaint.  His proposed Amended Answer proposes clarification that Hutchison denies that the amounts mentioned in the December 30, 2014, demand letter from Day Dreams to Hutchison were due.  The proposed Amended Answer also withraws Hutchison's counterclaim, which would moot Day Dreams' motion to dismiss the counterclaim.  Finally, Hutchison states that the amendments would "moot most of Plaintiffs' recently filed motion for partial summary judgment."  (Docket entry 32, p. 3).

The Court accepts defendant's explanation of mistake in the Original Answer, and finds that the mistake was called to the plaintiffs' attention as soon as it was discovered.  "The Federal Rules reject the approach that pleading is a game of skill in which

one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957)(quoted in <u>Foman v. Davis</u>, 371 U.S. 178, 181 (1962)). Furthermore, the defendant's motion was filed well within the deadline for amending pleadings, and the parties are in the very early stages of discovery.   The Court further finds that any prejudice to the plaintiffs is so slight it does not justify denial of the defendant's motion.

The Court shall grant the defendant's Motion for Leave to Amend Answer.   The plaintiffs' Motion to Dismiss Defendant's Counterclaim shall be denied as moot.   The plaintiffs' Motion for Partial Summary Judgment shall be denied without prejudice, and the plaintiffs shall be granted leave to file a new Motion for Partial Summary Judgment after the Amended Answer is filed.   The defendant's motion to file a Sur-Reply to the plaintiffs' reply brief in support of their motion for partial summary judgment shall therefore be denied as moot.

Accordingly,

IT IS HEREBY ORDERED that the defendant Charles D. Hutchison's Motion for Leave to Amend Answer **(docket entry 32)** is GRANTED, and the defendant shall file his Amended Answer upon receipt of this Order;

FURTHER ORDERED that plaintiffs Day Dreams Resources, LLC, and Jerry P. Ogden's Motion to Dismiss Defendant's Counterclaim **(docket**

**entry 22)** is DENIED AS MOOT;

FURTHER ORDERED that the plaintiffs' Motion for Partial Summary Judgment **(docket entry 26)** is DENIED WITHOUT PREJUDICE, and the plaintiffs may file a new motion for partial summary judgment upon the filing of the Amended Answer;

FURTHER ORDERED that the defendant's motion to file a Sur-Reply to the plaintiffs' reply brief in support of their motion for partial summary judgment **(docket entry 41)** is DENIED AS MOOT.

SO ORDERED, this the 28th day of October, 2015.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE